UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

REINERE R. RENAUD,

        Plaintiff,

-against-

FEDERAL EXPRESS CORPORATION,

        Defendant.

------------------------------------------------------X

MEMORANDUM AND ORDER
10 CV 4261 (LB)

**BLOOM, United States Magistrate Judge:**

Plaintiff, Reinere R. Renaud, brings this *pro se* employment discrimination action against his former employer, FedEx Express Corp., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiff alleges that defendant discriminated against him on the basis of his race, color, and national origin when it terminated his employment. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff has not opposed defendant's motion. For the following reasons, defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff is a black male from Trinidad who worked as an Operations Manager for FedEx on Staten Island from November 1, 2002 through July 14, 2009. (Def.'s 56.1 Stmt. ¶ 1, ECF No. 26-3.)[2]

---

[1] Defendant provided plaintiff with the requisite notice to *pro se* litigants pursuant to Local Rule 56.2. (ECF Nos. 28-29.)

[2] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendant filed a 56.1(a) statement, but plaintiff did not file a corresponding statement or oppose defendant's motion. As such, the Court may deem the facts in defendant's Rule 56.1 statement admitted. See Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts contained in defendant's Rule 56.1 statement; "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). Accordingly, the Court deems admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by the record. In addition to its Rule 56.1 statement, defendant attaches five exhibits to its Motion for Summary Judgment: plaintiff's responses to defendant's requests for admission and interrogatories, and the declarations of Shelley Simes, Scott Price, and Tracey Ferrara. (ECF Nos. 26-4–26-8.) The Court refers to those exhibits instead of defendant's Rule 56.1 statement where appropriate.

As an Operations Manager, plaintiff's responsibilities included training and supervising fifteen to twenty hourly employees, providing information to employees regarding company policies, and ensuring compliance with those policies. (Id. ¶ 2.) On July 14, 2009, plaintiff was terminated for violating FedEx Policy 7-35, the Reduced-Rate Shipping and FedEx Office Discount Policy,[3] by: (1) processing his own discounted shipment on June 24, 2009; (2) failing to put his FedEx employee number on the shipping document for the package he shipped on June 24, 2009; (3) using his FedEx reduced-rate shipping discount to ship packages for a commercial use; (4) repeatedly allowing a California retail business vendor to ship items to his wife's business using his FedEx reduced-rate shipping discount; and (5) failing to check his credit card statements to ensure that only authorized shipments were receiving his FedEx reduced-rate shipping discount. (Id. ¶¶ 5-6.) Policy 7-35 expressly states that "improper use or abuse of employee discount shipping privileges . . . is considered a policy violation and subjects the employee to discipline, up to and including termination . . . ." (Id. ¶ 11.) Plaintiff argues that he unintentionally violated the policy, and that defendant investigated this matter and disciplined him more severely because he is black and Trinidadian.

The investigation leading to plaintiff's termination began when FedEx security personnel in Atlanta opened a package that plaintiff had sent to his wife's retail business in Georgia on June 24, 2009.[4] (Id. ¶¶ 22-24, 26-28.) The package contained clothing, as well as documents related to plaintiff's wife's business. (Id. ¶¶ 26-28.) FedEx found that plaintiff had violated Policy 7-35 by processing his own discounted package, failing to reference his employee identification number on the package, and by using his employee discount for commercial purposes. (Id. ¶ 6.) FedEx's investigation

---

[3] Policy 7-35 contains a number of restrictions on the use of the employee discount shipping rate. The policy prohibits use of the discount for any business or commercial purpose, requires every package shipped under the discount to reference the employee's FedEx ID number, and requires employees to report any "unauthorized use or abuse" of their discount shipping privileges to FedEx. (Def.'s 56.1 Stmt. ¶¶ 17, 20, 30.) Further, employees are required to ensure that "only authorized shipping charges have been billed to their credit card" and that "immediate family members . . . are aware" of the discount shipping restrictions." (Id. ¶¶ 34, 41.)

[4] The terms and conditions in the FedEx Service Guide provide that FedEx "may, at our sole discretion, open and inspect any shipment without notice." (Def.'s 56.1 Stmt. ¶ 25.) Defendant maintains that plaintiff agreed to those terms and conditions by completing an Airbill for the June 24, 2009 package. (Id.)

2

further revealed that plaintiff had used his employee discount to ship a total of eight packages to his wife's business between August 8, 2008 and July 14, 2009. (Id. ¶ 21.) In addition, FedEx found that two California business vendors had shipped packages to plaintiff's wife's business address using plaintiff's discount shipping account. (Id. ¶¶ 37-39.) Based on plaintiff's complaint and the discovery materials attached to defendant's instant motion, it appears that plaintiff discussed his policy violations with FedEx security personnel on at least two occasions, and that he was suspended by Senior Manager Shelley Simes on July 8, 2009.[5] (Compl. 6, ECF No. 1; Def.'s Internal Invest. Docs. ("Invest. Docs."), ECF No. 26-4 at 22, 39-42.)[6] On July 14, 2009, Simes terminated plaintiff. (Def.'s 56.1 Stmt. ¶ 5.) Plaintiff alleges that he appealed his termination to FedEx, but that his appeals were "upheld by 3 different levels of Fedex executive managements." (Compl. 6, 8.)

Plaintiff contends that he should not have been terminated because the policy violations were committed by his wife without his knowledge and consent, and because another employee was not terminated for similar conduct. (Pl.'s Resp. to Def.'s Interrog. ("Interrog.") No. 18, ECF No. 26-5.) He states that he processed his own package on June 24, 2009 because no shipping agents were available to do so, but he claims that this package—and all eight of the packages he shipped to his wife's business—contained personal items related to his family's move to Georgia. (Compl. 6; Pl.'s Resp. to Def.'s Req. for Admis. ("Admis.") No. 47, ECF No. 26-4.) He states he used his wife's business address because she was not home to receive the packages. (Compl. 6; Invest. Docs.) Plaintiff also contends that the commercial shipments from California were accidentally arranged by his wife without his knowledge or consent. (Compl. 6, 8-9; Admis. Nos. 13, 48; Invest. Docs.). He claims that

---

[5] Defendant submits plaintiff's termination letter and several internal documents related to plaintiff's policy violations, which were attached to Defendant's Request for Admissions. The internal investigation documents include statements signed by plaintiff on July 8, 2009 and July 10, 2009, as well as an unsigned and undated statement. (ECF No. 26-4 at 22, 40-42.) Further, plaintiff's response to Defendant's Request for Admission No. 43 references a compact disc recording of "two interviews that you gave to FedEx security personnel." (Pl.'s Resp. to Def.'s Req. for Admis. ("Admis.") No. 43, ECF No. 26-4.)
[6] The Court references the ECF page numbers listed on the top of each page.

when he and his wife became aware of this violation, his wife immediately changed the vendors' shipments to charge her own business account. (Invest. Docs.)

Plaintiff alleges that he would not have been investigated or disciplined in the same way if he were white. He alleges that during a meeting on July 14, 2009 with his Senior Manager Shelley Simes ("Simes"), he was terminated. He also alleges that he was informed at the meeting that the security manager in Atlanta had searched his package because he recognized plaintiff's name from an interview the manager had conducted with plaintiff when plaintiff was seeking a transfer to the Atlanta area in 2007. (Compl. 6, 9-10.) Plaintiff also alleges that he overheard his supervisor comment, "'I think he is being profiled' by the white security guards." (Compl. 8.) In his sworn interrogatories, plaintiff claims that Simes stated "that I was profiled because I'm a black man from Trinidad and had it happened to a white employee they would not be investigated and punished as I was." (Interrog. Nos. 11, 19.) Simes, however, submits an affidavit stating that she "did not say to anyone nor [does she] think that FedEx Security Personnel opened or inspected or targeted Mr. Renaud's June 24, 2009 package because he is African-American or from Trinidad or because of his color." (Simes Decl. ¶ 7, ECF No. 26-6.) She states that "Mr. Renaud's numerous violations of FedEx Policy 7-35 were the only reasons that I terminated his employment." (Simes Decl. ¶¶ 6-7.) Plaintiff also alleges that a similar situation occurred to another black employee, though nothing in the record supports that allegation. (Compl. 8.) Further, plaintiff compares himself to Russ A. Battle, a non-Black, non-Trinidadian, FedEx employee who was terminated for violating Policy 7-35 but reinstated. (Compl. 6, 10; Def.'s 56.1 Stmt. ¶ 51.)

## PROCEDURAL HISTORY

On April 30, 2010, plaintiff filed an employment discrimination charge with the New York State Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") alleging that FedEx terminated him based on his race, color, and national origin. (Compl. 8.) The EEOC found that plaintiff failed to state a claim of employment discrimination and issued plaintiff a

right-to-sue letter on June 17, 2010. (Id.11-12.) Plaintiff filed his complaint against defendant in this Court on September 15, 2010 and was granted *in forma pauperis* status. (ECF Nos. 1, 3.) On January 20, 2011, the parties consented to a Magistrate Judge for all purposes. (ECF No. 19.) The parties completed discovery and defendant now moves for summary judgment. Plaintiff has failed to oppose the motion.

## DISCUSSION

### I. Standard of Review

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000) (citation omitted); see also Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the non-moving party on summary judgment).

Here, because plaintiff is proceeding *pro se*, the court reads his papers "liberally and interpret[s] them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted)). Even though plaintiff has not opposed defendant's motion, the facts are still viewed

in the light most favorable to plaintiff, and the Court must still determine whether defendant is entitled to judgment as a matter of law. See Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) (Where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."); Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) ("The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically.").

**II. Title VII**

Title VII provides that an employer may not "discharge any individual, or otherwise . . . discriminate against any individual . . . because of such individual's race, color, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). The rights of an employee are violated when "[a]n employment decision . . . is 'based in whole or in part on discrimination.'" Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) (emphasis removed) (quoting Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (quotation omitted)). Plaintiff bears the burden of proving, by a preponderance of the evidence, that race, color, or national origin "was at least one of the 'motivating' factors" behind his termination. Id. at 138 (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995)); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

Title VII claims alleging discriminatory discharge are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010). First, the plaintiff must establish a *prima facie* case of discrimination by showing that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Id. at 491-92 (citing Holcomb, 521

F.3d at 138). The burden of establishing a *prima facie* case is not onerous; however, "a plaintiff's case must fail if [he] cannot carry this preliminary burden." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted).

If the plaintiff succeeds in establishing a *prima facie* case, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason" for plaintiff's termination. Swift v. Countrywide Home Loans, Inc., 770 F. Supp. 2d 483, 487 (E.D.N.Y. 2011) (citing Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005)). This burden on defendant "is one of production, not persuasion; it can involve no credibility assessment." Reeves, 530 U.S. at 143 (quotation omitted).

If the defendant supplies a nondiscriminatory reason for plaintiff's termination, "the presumption of discrimination created by the *prima facie* case drops out of the analysis, and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" Swift, 770 F. Supp. 2d at 487 (quoting Dawson, 398 F.3d at 216 (quotation omitted)). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves, 530 U.S. at 143 (quotation omitted).

A. **Plaintiff fails to establish a *prima facie* case of discrimination**

Defendant does not dispute that plaintiff has met the first three prongs of his *prima facie* case: plaintiff is a black Trinidadian, he was qualified for the position of Operations Manager, and his termination constituted an adverse employment action. (Def.'s Mem. of Law 6, ECF No. 26-2.) However, defendant argues that plaintiff cannot establish the fourth prong of his *prima facie* case, that the circumstances of his termination give rise to an inference of discrimination.

A plaintiff can establish an inference of discrimination through direct evidence of discriminatory intent, or through circumstantial evidence demonstrating that the employer treated the

7

plaintiff less favorably than a similarly situated employee outside of his protected group. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 77 (2d Cir. 2001); Amna v. New York State Dept. of Health, No. 08–CV–2806 (CBA)(LB), 2011 WL 4592787, at *7 (E.D.N.Y. Sept. 30, 2011). "[I]n reviewing the record, the court is careful to search for any kind of evidence that would support plaintiff's claim of intentional discrimination, bearing in mind that 'smoking gun' evidence of discriminatory intent is rare and most often must be inferred.'" Velez v. SES Operating Corp., No. 07 Civ. 10946 (DLC), 2009 WL 3817461, at *8 (S.D.N.Y. Nov. 12, 2009) (quoting Forsyth v. Fed'n Emp't & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005)). Although plaintiff has not submitted any evidence in opposition to defendant's motion, plaintiff's complaint attaches his submission to the EEOC, and defendant attaches plaintiff's sworn responses to defendant's interrogatories. Plaintiff's complaint, liberally construed, alleges an inference of discrimination based upon three different grounds: comments made by his supervisor, the preferential treatment of another employee who is not black or Trinidadian, and the treatment of an unidentified black employee.

1.     **Plaintiff's Supervisor's Statements**

In his sworn interrogatory responses, plaintiff asserts that he heard Senior Manager Shelley Simes state that he was profiled by the security officer in Atlanta because he is a black man from Trinidad, and that he would not have been investigated if he were white. (Interrog. Nos. 11, 19.) His complaint to the EEOC states that he "overheard" his supervisor's comment, but the record provides no evidence as to the time or context of the alleged statement. (Compl. 8) Further, plaintiff states that, other than his reference to Simes' statement, no FedEx employee has made derogatory comments about his race, color, or national origin, and that he does not recall ever reporting or complaining about discriminatory conduct while employed at FedEx. (Def.'s 56.1 Stmt. ¶ 46; Interrog. Nos. 13, 19.) In her declaration attached to the instant motion, Simes denies stating or even thinking that plaintiff was

racially profiled, or that FedEx security personnel inspected plaintiff's package due to his race, color, or national origin. (Simes Decl. ¶ 7.)

While a plaintiff can establish an inference of discrimination by demonstrating "bias in the sequence of events leading to the plaintiff's discharge," plaintiff fails to establish such bias in this case. Velez, 2009 WL 3817461, at *8 (quoting Abdu-Brisson v. Delta Air Lines, Inc, 239 F.3d 456, 468 (2d Cir. 2001) (quotation marks omitted)); Vahos v. General Motors Corp., No. 06-CV-6783 (NGG)(SMG), 2008 WL 2439643, at *5 (E.D.N.Y. Jun. 16, 2008) ("impermissible bias of a single individual . . . may taint the ultimate employment decision . . . even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the . . . process") (alteration in original) (quoting Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 125-26 (2d Cir. 2004) (quotation omitted)). Here, assuming Simes made the statement that plaintiff was profiled by the security officer who opened the package in Atlanta,[7] there is no evidence in the record to support that the security officer played a meaningful role in the employer's decision to terminate plaintiff's employment. To draw the inference of discrimination that plaintiff seems to allege – that the security officer inspected plaintiff's package because plaintiff was a black Trinidadian, and that the biased officer played a meaningful role in the company's decision to terminate plaintiff—"would require a finder of fact to engage in wholesale—and wholly impermissible—speculation." Butler v. New York Health & Racquet Club, 768 F. Supp. 2d 516, 535 (S.D.N.Y. 2011).

## 2. Disparate Treatment of another Employee who Violated Policy 7-35

Plaintiff also alleges that he was discriminated against because he was treated differently than Russ A. Battle, a non-Black, non-Trinidadian employee who works out of the Port St. Lucie, Florida

---

[7] "Generally, a plaintiff's naked assertion against sworn testimony does not raise a genuine issue of material fact . . . ." Desir v. Bd. of Co-op. Educ. Servs. (BOCES) Nassau Cnty., No. 07-CV-1994 (RRM)(ARL), 2011 WL 1204631, at *6 (E.D.N.Y. Mar. 29, 2011) (quotation and citation omitted). However, for the purposes of the motion, the Court assumes that Simes made the comment.

9

FedEx station. (Def.'s 56.1 Stmt. ¶¶ 51-52.) In 2009, Battle was terminated for violating Policy 7-35 by "allowing his FedEx reduced rate shipping account to be used to ship a non-profit package to his wife's business for a commercial business use." (Def.'s 56.1 Stmt. ¶ 55.) He was subsequently reinstated during the company's internal grievance process, though he was issued a disciplinary letter, a one-week unpaid disciplinary suspension, and a twelve-month suspension of his discount shipping privileges. (Id. ¶ 55; Price Decl. ¶ 5, ECF No. 26-7.)[8]

To establish an inference of discrimination by comparing himself to Battle, plaintiff must demonstrate "that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (citations omitted). Plaintiff must show that he was similarly situated to his comparator "in all material respects." Id.

> What constitutes "all material respects". . . varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. In other words, there should be an objectively identifiable basis for comparability.

Id. at 40 (citation and quotation omitted). In the Second Circuit, courts routinely compare the employees' job positions and responsibilities, Martin v. State Univ. of New York, 704 F. Supp. 2d 202, 226 (E.D.N.Y. 2010); whether the employees are subject to the same standards governing performance evaluation and discipline, Hadman v. Sebelius, No. 09–CV–4414 (ARR), 2011 WL 4736972, at *6 (E.D.N.Y. Oct. 6, 2011); and whether or not the employees reported to the same supervisor, Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006).

---

[8] Defendant submits an affidavit from Battle's supervisor, Operations Manager Scott Price. (ECF No. 26-4.) Plaintiff also attaches documents related to Battle's internal grievance process to his interrogatory responses. Neither party proffers that FedEx's internal investigation reports are admissible evidence. Although investigatory reports can at times be admitted as business records under the hearsay exception, or for purposes other than the truth of the matter asserted, here the Court considers those reports for background only. See Vahos, 2008 WL 2439643, at *4 ("Evidence submitted in support of a summary judgment motion must be admissible, and the proponent of the evidence bears the burden of showing that the evidence is admissible.") (citing Patterson v. Cnty. of Oneida, 375 F.3d 206, 219-20, 222 (2d Cir. 2004)).

Plaintiff fails to establish that he and Battle were similarly situated in all material respects. They held different positions with different responsibilities, reported to different supervisors, and were subject to different performance standards. Battle is a non-managerial, hourly Service Assurance Agent supervised by Operations Manager Scott Price. (Def.'s 56.1 Stmt. ¶¶ 52, 54, 56). Plaintiff was a salaried Operations Manager who supervised service agents like Battle and was supervised by Shelley Simes. Plaintiff's job included various supervisory responsibilities that were not part of Battle's job description, and FedEx holds Operation Managers to higher performance standards than hourly employees with respect to compliance with corporate policies. (Id. ¶¶ 1-3, 53.) Further, plaintiff has not shown that Battle's violation of Policy 7-35 was of comparable seriousness. Plaintiff was terminated for numerous violations of Policy 7-35. (Id. ¶¶ 5-6.) In contrast, Battle was initially terminated for a single violation of Policy 7-35, and he was reinstated after his supervisor determined that this policy infraction was "a single, one-time incident of which he was not aware . . . ." (Id. ¶ 55.) "When a plaintiff's misconduct is objectively more serious than that of a proposed comparator, differential treatment by the employer does not create an issue of fact that will defeat a motion for summary judgment." Conway, 414 F. Supp. 2d at 464 (citations omitted).

Thus, plaintiff has not shown that there is a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases," and he fails to establish an inference of discrimination based on disparate treatment. Ruiz, 609 F.3d at 494 (quoting Graham, 230 F.3d at 40).

### 3. Plaintiff's Statements about an Unidentified Black Employee

In his complaint to the EEOC, plaintiff states that "[i]t has come to my attention that a similar situation also occurred to another Black employee at the Florida location, where the employee was readily terminated and not given much opportunity to react to the situation." (Compl. 8.) The record contains no admissible evidence—or any other information—about this Florida employee. Further, in plaintiff's response to defendant's interrogatory request to identify "all other FedEx employees who

11

you contend were discriminated against on the basis of their race, color, and/or national origin," he stated, "None I'm presently aware of." (Interrog. No. 12.) Plaintiff's single reference to this employee in his complaint to the EEOC is conclusory and unsupported by the record; this statement is thus insufficient to establish any inference of discriminatory intent. See Gambello v. Time Warner Commc'ns, Inc., 186 F. Supp. 2d 209, 224 (E.D.N.Y. 2002) (claims by co-workers that employees in plaintiff's protected class "were treated less favorably, without evidence of specific instances to support such allegations, are too general and conclusory" to support an inference of discrimination) (citation omitted).

For the reasons stated above, plaintiff fails to establish an inference of discriminatory intent to satisfy the fourth prong of his *prima facie* case.

**B.     Defendant establishes a legitimate nondiscriminatory reason for termination**

Even assuming that plaintiff had established a *prima facie* case, defendant has met its burden of providing a legitimate, nondiscriminatory reason for plaintiff's termination. FedEx terminated plaintiff's employment for violating Policy 7-35, which expressly states that "[i]mproper use or abuse of employee discount shipping privileges . . . is considered a policy violation and subjects the employee to discipline, up to and including termination . . . ." (Def.'s 56.1 Stmt. ¶¶ 5, 11.) "Discharging an employee for violating company policies constitutes a legitimate and nondiscriminatory reason for terminating employment." Welland v. Citigroup, Inc., No. 00 Civ. 738 (NRB), 2003 WL 22973574, at *6 (S.D.N.Y. Dec. 17, 2003) (citing Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 65 (2d Cir. 1997)).

**C.     Plaintiff fails to establish that defendant's reason is a pretext for discrimination**

Once an employer articulates a legitimate, nondiscriminatory reason for the plaintiff's termination, the burden shifts back to the plaintiff to prove that the legitimate reason offered by the defendant was a pretext for discrimination. Ruiz, 609 F.3d at 492. At this stage, the question becomes

whether the evidence, taken as a whole and viewed in the light most favorable to plaintiff, would permit "a rational finder of fact [to] conclude that the adverse action taken against [plaintiff] was more likely than not a product of discriminatory animus." Leibowitz v. Cornell Univ., 584 F.3d 487, 504 (2d Cir. 2009) (citation omitted). The court may consider "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (alteration in original) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 148-49).

Although plaintiff argues that his termination was not warranted, plaintiff must show that defendant's proffered reasons are pretext for *discrimination*, not that they are unfair or incorrect. "[I]t is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." Kalra v. HSBC Bank USA, N.A., 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008) (citations omitted); see also Rodriguez v. City of New York, 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008) ("evidence that the decision was . . . based on a faulty investigation" was insufficient to establish pretext) (citations omitted)).

There is simply no record evidence that defendant discriminated against plaintiff or departed from permissible disciplinary procedures. See Bickerstaff v. Vassar College, 196 F.3d 435, 453 (2d Cir. 1999) ("[d]epartures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision") (alterations in original) (quoting Stern v. Trustees of Columbia Univ. in the City of New York, 131 F.3d 305, 313 (2d Cir. 1997). While the Court understands that losing his supervisory position after being employed by FedEx for many years is a significant hardship for plaintiff and his family, and that plaintiff strongly believes that he

was terminated without being given the opportunity to state that "this was an accident" (Compl. 8), there is no record evidence to support that the adverse action taken against plaintiff was "more likely than not a product of discriminatory animus." Leibowitz v. Cornell Univ., 584 F.3d at 504.

## CONCLUSION

Accordingly, defendant's motion for summary judgment is granted. The Clerk of Court shall enter judgment and close this case. Each party shall bear their own costs.

SO ORDERED.

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: January 6, 2012
Brooklyn, New York